Good morning. May it please the Court, my name is Robert Friedman. I represent Appellant Cynthia Coleman today. I will keep track of my time, but just wish to inform the Court I will intend to reserve two minutes for rebuttal. I will begin by showing why the ALJ violated SSR 004P and why that constitutes harmful error. In 2000, in order to implement a uniform national policy instructing ALJs on how to identify and resolve conflicts between vocational expert testimony and the Dictionary of Occupational Titles, the DOT, the Commissioner promulgated 4P. And 4P stands for the principles that the DOT is the primary authority for defining what a job's demands are, that what the DOT has to say regarding any particular job is critical, and that an ALJ has to know before relying on VE testimony whether it's consistent with the DOT, and if not, obtain a reasonable explanation for any deviation. In this case, we have a huge deviation from the DOT. The ALJ found Coleman can sit, stand, or walk no more than one hour at one time. And consistent with that restriction, the VE identified four jobs. But according to the DOT, all four jobs require an individual to maintain one position a minimum of two hours at a time. And this is not a small disparity. The DOT requires twice as long as the VE claimed. Now 4P has three requirements, all of which here the ALJ violated. The first requirement is that the ALJ must ask the VE, is your testimony consistent with the DOT? Here, the ALJ never asked the question. And in Misaki, this court ruled that the failure to ask the question, is your testimony consistent with the DOT, mandated reversal. So I think that the government has acknowledged that point, that there wasn't the question. And as I understand it, and you can make sure I'm on the right track, the issue we then have to decide is whether the VE's explanation is sufficient so as to resolve that failure to ask the precise question. And my point on that is the VE did talk about the appointment clerk job and saying, you know, that you have sitting only 80% of the time and you could sit and stand and get up and that sort of thing. So the question is why wouldn't that be sufficient to meet the gap? The short answer to your question, Your Honor, is because it contains no discussion or knowledge or comparison of what the DOT says. This is not a universe where you only look within the four corners of what the VE has to say and say, does it make sense, is it rational? Rather, this is a universe in which the force of gravity is accorded to the DOT. And any testimony which conflicts any VE testimony has to be compared to what the DOT says. In this case, there's no evidence whatsoever that the VE even knew that the DOT required two hours of sitting, standing and walking. So his freestanding testimony in conflict with the DOT cannot be harmless error. Well, okay, so if you have the VE's testimony over here and then you have the DOT delineation over here, and if there's not a conflict when you try to basically interlineate the two, then would it be harmless error? In other words, the VE doesn't have to actually opine on the DOT because that was what they forgot to ask. No, Your Honor, I disagree. The VE does have to opine. The second requirement of 4P says that if the VE disagrees with the DOT, then the ALJ has to obtain a reasonable explanation for the conflict and address that explanation in his decision. Here, we don't know, one, what the basis of the VE's testimony was. How did he know it was one hour? Two, there's no indication that he knows that the DOT requires two hours, and it does. And three, the other ALJ's violation here is that he didn't address in his decision his finding regarding the conflict. What the ALJ did in this case was to say the DOT and the VE testimony are consistent when, in fact, they're not consistent. Again, this is not a small disparity. The VE said to do these jobs, you only have to sit, stand, and walk one hour. The DOT says two. So we have a huge conflict that's unresolved. I mean, unless the court is prepared to say that simply because the VE says it, it has to be true, then it can't sustain the finding here because there's no addressing by the ALJ of the conflict. And if you take a look at this Court's cases, in Terry, in 1990, we cited it in our brief, the VE came in and gave some testimony about what the DOT, about jobs. And the court didn't say, oh, well, the VE's an expert, we're going to accept his testimony. The court examined the testimony, compared it to the DOT, and said there's a conflict, there's no explanation for the conflict, and therefore the VE's testimony conflicting with the DOT cannot stand. Can I just step back one second? Yes. On the DOT conflict that you claim, are you talking about light work or sedentary work? Both. Both sedentary and light work require the – sedentary work in 96-9P, it requires prolonged sitting, which the commissioner has defined in 96-9P to require a minimum of two hours at one time. In other words, you get a break every two hours. Every two hours, not one hour, two hours. The light work in 83-12 is defined as prolonged standing and walking, and prolonged means the same thing whether you're talking about prolonged sitting, standing, or walking, it's two hours. And I would call the Court's attention to another piece of evidence in the file, which is in the record at 831, 832, and 837, I believe, and that's the training manual we cited. The manual that the commissioner uses to train ALJs on how to do these cases gives the hypothetical which says we want you – it's instructing ALJs. Suppose you have a hypothetical, and the hypothetical says the individual can only sit for one hour and then has to get up after five minutes. So the commissioner asks, is this consistent with the DOT or does this require VE testimony to explain? And the commissioner's own training manual says that that's inconsistent with the DOT. You need to have a VE address it. And that was simply not done here. The VE simply summarily said one hour with no identification of the basis of his testimony. The commissioner had an obligation to address that deviation in his decision and didn't in fact said that it's consistent when it's not consistent. And the remedy in your view would be what? And for further administration. For this to actually happen in terms of the testimony. Right, because if the VE – if the commissioner complied with his duty and identified what – you know, the conflict and asked the VE, then we would have probed the basis of the VE's testimony. But under 4P, it's the commissioner's obligation to ask this question, to make these findings in his decision. And when he didn't do that, we won the case. I have one question. What is the relationship, if any, between a negative credibility assessment, if that was made here, and the 4P issue? You mean the negative credibility issue regarding the fibromyalgia and the obesity and the pain complaints? Right. Well, the ALJ limited Coleman to – credited Coleman's testimony to the effect that he limited her to one hour of sitting, standing, and walking. For purposes of this argument, we're not disputing – well, we think it should be more. But even if you accept what the ALJ found, those limitations preclude all employment here. So the negative credibility was only whether she's more limited than one hour. But if you accept the ALJ's finding of one hour, we still win because it still conflicts with the DOT. Okay. Thank you. Thank you. Thank you. Good morning, Your Honors. Good morning, Counsel. Brett Ekelberg on behalf of Commissioner Astru. Your Honors, the Commissioner would ask this Court to affirm the administrative law judge's decision in this case because it is supported by substantial evidence, including the findings and opinions of Dr. Knowles. Why don't you cut to the chase? That's what he argued is you've got – the Commissioner has a very clear, unequivocal duty to ask whether there's a conflict. That wasn't done here. That's correct. And so what we have is this somewhat suppositional testimony from the V.E. and ER-778 or AR-778, and that's troublesome. Why should we be having, as an appellate court so far removed from all of this, speculate about what the V.E. and the ALJ were talking about when the administration rules, and apparently the training manual says, ask. It's real simple. Just say, is there a conflict? And if there is, why does it apply here? Correct, Your Honor. The Commissioner does concede that the administrative law judge did not ask the question about consistency between the DOT and the V.E.'s testimony. However, the keys to answering this question are harmless error analysis. This is harmless error. According to Carmichael, the question is not whether the ALJ would have made a different decision absent any error. It is whether the ALJ's decision remains valid despite such error. Case law in the Ninth Circuit says, Masachi v. Astrew, as cited by Mr. Friedman, says that it is harmless error if either there is no consistency between the V.E.'s testimony and the Dictionary of Occupational Titles or, as in the case of Johnson v. Shalala, the vocational experts provides persuasive testimony that addresses any possible conflict. And persuasive testimony in Johnson v. Shalala is defined as a V.E. who is aware of the particular requirements of a given job and then analyzes that job's appropriateness in light of the claimant's specific limitations and abilities. And in this case, the Commissioner's perspective is there was no conflict between the V.E.'s testimony and the Dictionary of Occupational Titles. But if this Court finds there was a conflict, Masachi v. Astrew and Johnson v. Shalala says that you can look at the vocational experts' testimony in this case, which is actually quite extensive about the very factors I just mentioned. Well, I guess what you really get down to is that it appears that the only testimony that actually tries to take into account these issues is the appointment clerk. You're down to one job described by the V.E. but without an explanation as to how that job can be resolved with the DOT. Where in the testimony does the V.E. resolve what I think is an apparent conflict, might not be an actual conflict, but seems to be an apparent conflict? Would you agree at least there's a potential apparent conflict here? Well, there might be a potential apparent conflict on the surface. So how does that get resolved by the V.E.? I would direct the Court to look at the evidence of record primarily focused on pages 777 through 779. And you will see the testimony in those pages that the V.E. provided. In addition, you can then look and see, I believe it's on evidence of record page 48, 47 and 48, where the administrative law judge cites the vocational experts' testimony to this regard. Again, if I could say the vocational expert, he described the appointment clerk job. And the RFC is critical here because the RFC says that Ms. Coleman can perform light work as long as she has an opportunity or the ability to only briefly every hour. The vocational expert listened to the testimony and then he proceeded to explain that in the appointment clerk position on page 777, it's a sedentary level job. And she was, the ALJ found she could perform light work. The appointment clerk position was a sedentary level job, so that would be appropriate. And on 777, the vocational expert says, so regarding the changes of positions, as long as that could be, naturally in the course of that work, they would often get up to maybe, you know, access a file or talk to another person or be kind of in a station where they could sit or stand. So they wouldn't necessarily have to sit for two hours at a time, constantly between each break. They would maybe sit 80% of the time and then have other short intervals where they could be getting up. You know, one of the questions I have there, it's sort of like without having any specificity as to what this job is, it's like the vocational expert is sort of throwing out, well, maybe you'd have to get up, maybe you'd have to sit down, maybe you'd do this. But that those don't actually dovetail with the DOT. And so my question then is, is that really an explanation? I mean, it is testimony, and I credit, you know, your argument there. But it is a kind of explanation that the courts are looking for so we can try to figure out how this all fits. Yes, it is. With Johnson v. Shillelagh, this would constitute persuasive testimony because the VEs looked at the specific job and the limitations. And to clarify, Coleman has advanced the proposition that there's a disparity. They're deriving the disparity between the testimony and the DOT by citing Social Security Ruling 969P and 8312P. To clarify, the correct reference point according to Social Security Ruling 004P, it's the DOT definitions of sedentary and light work. And 20 CFR 404-1657A defines sedentary work. 404-1567B defines light work. These are the relevant definitions in terms of complying with SSR 004P. It's not the Social Security rulings cited, which are consistent, but nonetheless they develop it in a much more detailed fashion that doesn't apply for this question. Here's how I tried to envision it, okay? Imagine here's the DOT take light work. And so you have this big circle of stuff that you can do. For example, it's significant standing and walking is what they say in the DOT. But this person needs to get up every hour. And so it's not clear that there isn't a conflict and that maybe she can do some little tiny thing in the Venn diagram. I don't know. But maybe not. And so that's where we don't really have somebody saying, well, really significant standing or walking, the kind of jobs you have in there, would also include this kind of job that this lady could do. So that's where I'm having a little bit of an evidentiary gap, and I'm wondering why it wouldn't be appropriate to send it back. And instead of us trying to kind of fit together these pieces that don't quite match, we just have the vocational expert would flat-on do what should have happened in the first place, which I know we all wish would have happened, then we wouldn't probably be here. And, Your Honor, the commissioner would, again, reiterate that we do not see a conflict between the vocational expert's testimony and, in this case, for the appointment clerk job, the DOT's definition of sedentary work, which says work involving sitting most of the time. And the VE testified she would be sitting most likely 80% of the time. So that's most of the time. That's consistent. Although the job may involve walking or standing for brief periods of time. And the ALJ specifically said the job just needs to enable her to have the ability to change positions between sitting, standing, and walking, if only briefly. And the VE did testify at 777-778 that this job would allow her to do this. Where does the two hours come from? The two hours comes from the Social Security rulings 96-9P and 83-12P. What's interesting is Social Security ALJ accepted as that is what would be the DOT concept? No, Your Honor. I think there is a dispute about what is the correct reference point. Here's why I'm asking. Because what you cited says so they wouldn't necessarily have to sit for two hours at a time, which validates that somebody was thinking two hours was the bogey here and that something less than that was appropriate for Ms. Coleman. Would you agree with that? Well, I would definitely agree. The ALJ said she needs to have the ability to move. The key distinction is when we start talking about sit-and-stand options. And, Your Honor, I'm over time. We do want to understand this, so thank you. But you have to look very carefully at the question of sit-and-stand and the two-hour options. What that's talking about is you keep working in one position for two hours and then you have a break. In this case, there's nothing in the vocational explanation or in the job requirements that would mean she has to stop working in order to meet her RFC, which is just to briefly change positions. As the V.E. said, she'd get up, she'd get a file. So he's very conscious of the RFC. She'd talk to a person. She'd sit back down. This is a sedentary-level position, which certainly... I guess the real question, though, she has the hour limitation, and the DOT talks about you can occasionally stand and walk. So I don't know if that means you can get up every hour or not under the DOT. You could. But we don't know that, right? But based upon the L.J. can rely upon the V.E. testimony, that is a source that he can rely upon in order to resolve if there is a conflict and to get information. And according to the V.E.'s testimony, she could perform these jobs. Thank you. And, Your Honor, I might just direct, if I might direct, I just have one minute, not a lawyer's minute, but one minute to address Judge Gould's question about credibility. And I will stay within one minute strictly, if not more. Well, you're already two minutes over. So I think that we have your argument in mind from the briefing on that. So thank you. Thank you very much. The Court's questions about what, should we really be here doing this in the first instance are absolutely on point because under 4P, this is the job of the L.J. And everything you heard or 90% of what you heard from the Commissioner is post hoc rationales, his explanation of what the V.E. might have meant or what the L.J. might have thought. That's not what the Court reviews. The Court has to review what the L.J. himself found. And here under 4P, the second prong requires the L.J. to provide in his, or the third prong requires the L.J. in his decision to provide explicitly what the basis of the deviation is. The DOT is binding. The Commissioner did not dispute 96-9P says you have to sit two hours. The training manual says if you have to sit one hour, that is a conflict with DOT. The Commissioner tried to assert that there was a huge difference between the DOT's definitions and the Commissioner's. He ignores 404, 1567, which makes them identical. If there was a room between the two, the Commissioner would be able to cite a case. There's no such case, no regulation. They're identical. The Commissioner focused on Johnson. In Johnson, you had a reasonable explanation. What did you have? The V.E. understood what the DOT required. The V.E. said I disagree based on my particular knowledge of the local labor market in Los Angeles. And that was the reason. And he said why I disagree, therefore, with the DOT. That was the reasonable explanation that was in Johnson that's not here. In Tomasetti, you had V.E. testimony which conflicted with the DOT. And what did the Court, this Court, do? It said that V.E. testimony, that explanation is sparse, indefinite and vague, and it doesn't stand. It doesn't satisfy the second prong of 4P, which requires the V.E. to explain in his written decision why he's deviating. Thank you. I want to thank both counsel for your arguments this morning. It's very helpful. These are technical cases that we know that you do day in and day out. And so we appreciate the very clear argument on these points. The case of Coleman v. Estrue is submitted.
judges: McKeown, Fisher, Gould